IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. KEITH ANDRE GREEN, Defendant. | CR 24–08–M–DWM–1 OPINION and ORDER |

Defendant Keith Andre Green is charged with conspiracy to possess with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. § 846 (Count 1), possession with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. § 841(a)(1) (Count 2), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). (Doc. 1.) The charges arise out of a Missoula Drug Task Force investigation that culminated with a traffic stop of a vehicle Green was driving on February 7, 2023, in Mineral County, Montana. Green moves to suppress the evidence seized from the search of the vehicle on the basis that law enforcement lacked reasonable suspicion to initiate the stop. (Doc. 53.) A suppression hearing was held on May 20, 2024. (Doc. 59.) The government called two witnesses, Missoula Police Officer Brandon O'Dell and Montana Highway Patrol Trooper

1

Steven Larson. The defense called one witness, Green himself.[1] Having considered the parties' filings, the record evidence, and the arguments at the hearing, Green's motion to suppress is denied.

## BACKGROUND

The factual background is taken from search warrant application and receipt by Officer O'Dell, (Doc. 54-2), bodycam footage of the traffic stop, (*see* Doc. 58), and the testimony of Officer O'Dell, Trooper Larson, and Green, (*see* Doc. 59). The Court finds both Officer O'Dell and Trooper Larson credible.

In 2022, Missoula Police officers began receiving information from numerous sources that Green was involved in distributing methamphetamine and fentanyl in Missoula. Missoula Drug Task Force officers O'Dell and Clark Nissley had information that Green and his girlfriend, Robin Holcomb, would travel together to Spokane, Washington, to obtain the illegal drugs before returning to the Missoula area to distribute them. On January 11, 2023, Officer O'Dell obtained a search warrant for Holcomb's vehicle, from which officers seized $20,520 cash, approximately 794 grams of suspected methamphetamine, over 5,000 suspected

---

[1] *See Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony many not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.").

2

fentanyl pills, and other valuable items. By monitoring Holcomb's jail calls, officers learned that Green had been with Holcomb just before the car was seized.

On January 17, 2023, while conducting surveillance on Green, Officer O'Dell observed Green meet with two individuals in the parking lot of a Missoula AutoZone. At one point, Green appeared to hand an item to a female inside another vehicle, which Officer O'Dell testified as consistent with hand-to-hand drug distribution activity. He also observed and photographed Green speaking with a male through the window of the car he was driving, a blue 2005 Chrysler 300 passenger car with Montana license plates. The Chrysler was registered to another person, but Officer O'Dell had observed Green driving this vehicle on one other occasion.

On February 7, 2023, Officer O'Dell learned from a license plate reader that the vehicle Green had been driving on January 17 was traveling eastbound on Interstate 90 near the Montana/Idaho border. Officer O'Dell contacted Trooper Larson and shared his suspicions that Green was bringing drugs into Montana from Washington. Trooper Larson informed Officer O'Dell that Green had an outstanding arrest warrant and invalid driver's license, and Officer O'Dell asked Trooper Larson to conduct a traffic stop on the vehicle if he could locate it, and if he independently determined there was reasonable suspicion to make the stop. Trooper Larson spotted the Chrysler, following it for a short time before pulling

3

alongside the car to attempt to verify that the driver was Green. Trooper Larson testified that he observed a male driving the vehicle who resembled Green and he initiated a traffic stop west of St. Regis. When pressed on this issue, Trooper Larson explained that, although the window tint was dark, he was able to make out the outline of a male that had similar physical characteristics to the photograph of Green he had on the screen of his patrol car, and he was confident that Green was driving the vehicle when he initiated the stop. Green disagrees with this part of the factual record, and testified that he was not visible to Trooper Larson through the tinted window of the Chrysler. Green also testified that, at the time of the stop, he had a valid driver's license and, according to Green, no outstanding warrants.

Immediately after activating his emergency lights, Trooper Larson observed the passenger lean forward in her seat, apparently attempting to conceal something. Trooper Larson positively confirmed that Green was the driver only after he had stopped the vehicle and Green partially rolled down the window. While Trooper Larson was questioning Green and the passenger, Missoula City Police Officer Nathan Champa arrived with a canine and conducted a dog sniff. The dog alerted, and a search warrant was obtained for the vehicle. Officers located approximately 3,958 suspected fentanyl pills, approximately 1,362.2 grams (approximately three pounds) suspected methamphetamine, approximately 6.28 grams of unknown powder, tin foil with residue, and two prescription pills.

4

## ANALYSIS

Green insists that the officers lacked reasonable suspicion to initiate the traffic stop; thus, the subsequent search of the vehicle and any later search warrants derived from that search should be suppressed as "fruit of the poisonous tree." Green insists that because the windows of Chrysler were "heavily" tinted, Trooper Larson could not reasonably claim to identify him and, because he could not have confirmed that Green was driving the vehicle before pulling it over, Green's outstanding arrest warrant and expired license could not form the basis for the traffic stop. The government maintains that Trooper Larson had ample reasonable suspicion for the traffic stop. First, Trooper Larson had the imputed knowledge from Missoula City Police officers that Green was distributing dangerous drugs in Missoula and had recently been seen driving the Chrysler. Second, even though the windows were heavily tinted, Trooper Larson credibly testified that before initiating the traffic stop, he had determined that the person driving the vehicle was consistent with Green's physical characteristics. Finally, Trooper Larson was justified in stopping the vehicle because of Green's outstanding arrest warrant, even though he did not confirm Green was the driver until after he initiated the stop. Because the government is correct, Green's motion to suppress is denied.

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. However, it "permits an officer to

5

initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (internal quotation marks omitted). "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks omitted). "An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also be grounded in objective facts and capable of rational explanation." *Id.* (internal quotation marks omitted). Officers' collective knowledge can provide the basis for particularized suspicion for a traffic stop "where an officer (or team of officers), with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search, or arrest." *United States v. Ramirez*, 473 F.3d 1026, 1033 (9th Cir. 2007).

"Because it is a 'less demanding' standard, 'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.'" *Glover*, 589 U.S. at 380 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). "[A] traffic violation is not the only lawful

6

basis for an officer to conduct a vehicle stop." *United States v. Nault*, 41 F.4th 1073, 1079 (9th Cir. 2022), *cert. denied* 143 U.S. 617 (2023). "An officer may stop a vehicle with reasonable suspicion that a person inside "has committed, is committing or is about to commit a crime[,] . . . [including] suspicion that the vehicle's driver is the subject of an outstanding arrest warrant." *Id.* Whether described as a "traffic stop," "interdiction stop," or an "investigative vehicle stop," the analysis is the same. *Id.*

In this context, the government has the burden to produce "specific and articulable facts" to support a suspicion of illegal activity justifying an investigatory stop.[2] *United States v. Willis*, 431 F.3d 709, 715 n.5 (9th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)); *see also id.* at 724 ("[T]he police officer has the initial burden of production." (Fletcher, J., dissenting)). Nevertheless, "[t]he defendant has the burden of proof on a motion to suppress evidence." *Id.* at 715 n.5 (citing *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005)). Accordingly, once the government has presented specific and articulable facts to justify a search or seizure, a defendant must refute any evidence

---

[2] This is consistent with the requirement that the government bears the burden of proving by a preponderance of the evidence that one of the delineated exceptions to the Fourth Amendment's warrant requirement applies. *See United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992).

7

or testimony presented by the government in order to "cast doubt" on the validity of that search or seizure. *Id.*

Here, Green argues that because the Chrysler's windows were heavily tinted and it was registered to someone else, the officer could not reasonably have identified Green as the driver before initiating the traffic stop. This argument is not convincing.

In *Nault*, the vehicle's license plates were connected to a warrant for the female owner of that vehicle. 41 F.4th at 1076. The stop was deemed legal even when the officer "could not tell whether the person in the driver's seat was male or female because the windows were tinted." *Id.* Here, the active warrant was connected to Green, who was not the vehicle's owner, but was known to have driven the vehicle on multiple occasions. Thus, Green is correct that his case is superficially distinguishable from *Nault*. However, the totality of the circumstances and the collective knowledge of the testifying officers provided specific and articulable facts upon which reasonable inferences could be drawn that Green was driving the Chrysler and that he was engaged in criminal activity. *Ramirez*, 473 F.3d at 1033.

Officer O'Dell had seen Green driving the vehicle on multiple occasions and had reliable information that Green trafficked methamphetamine and fentanyl pills from Washington state for distribution in Montana. Trooper Larson provided

credible testimony that he did in fact identify Green as the likely driver when he pulled alongside the Chrysler in his patrol car, before initiating the traffic stop. Although he admittedly could not be certain that Green was the driver until he approached the car and Green rolled down the window part way, Trooper Larson articulated several specific, objective facts that, in light of his training and experience, amount to reasonable suspicion. *Lopez-Soto*, 205 F.3d at 1105. Trooper Larson testified that through the rear window, which was not tinted, he could see a male in the driver's seat. Further, he observed the outline of an individual that appeared to match the physical "build" characteristics of the picture he had of Green. Trooper Larson testified that, in his training and experience, it was a common tactic for individuals involved in criminal activity to use vehicles that belong to other people because it allows them to distance themselves from anything nefarious that may be found in the car. He testified that he had already discovered there was an active arrest warrant and Green's driver's license was expired; thus, based on the totality of the evidence he received from Officer O'Dell and his own observations, he was confident he would find Green in the driver's seat when he initiated the traffic stop.

Ultimately, because the traffic stop and search of the vehicle Green was driving were valid, all subsequent search warrants were also valid, and the Court need not consider the government's alternative arguments.

## CONCLUSION

Accordingly, IT IS ORDERED that Green's motion (Doc. 53) is DENIED.

IT IS FURTHER ORDERED that this case is severed from *United States v. Svoboda*, CR 24–08–M–DWM–3. *See* Fed. R. Crim. P. 14(a). The following schedule shall govern further proceedings in this matter:

- Trial Date[3]: **May 28, 2024, at 9:00 a.m.**
  Russell Smith Courthouse
  Missoula, Montana

- Plea agreement deadline: **May 23, 2024, at 11:00 a.m.**

- JERS deadline: May 24, 2024

- Jury instructions and
  trial briefs deadline: May 24, 2024

This schedule must be strictly adhered to by the parties. The March 27, 2024 Scheduling Order (Doc. 33) shall remain in full force and effect in all other respects.

DATED this 21st day of May, 2024.

10:45 A.M.

Donald W. Molloy, District Judge
United States District Court

---

[3] **Counsel shall appear in chambers a half hour before the scheduled trial.**